

## NUMBER 13-09-00004-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**BANK OF AMERICA, N.A.,**                                             **Appellant,**

**v.**

**DWIGHT EISENHAUER, INDIVIDUALLY AND AS
INDEPENDENT EXECUTOR OF THE ESTATE OF
LORENE BELCHER WALTER, DECEASED,**            **Appellee.**

---

### On appeal from County Court at Law No. 1
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellee Dwight Eisenhauer, individually and as independent executor of the estate

of Lorene Belcher Walter, deceased, sued appellant Bank of America, N.A. (Bank of

America) to recover $27,497.67 Bank of America paid to Jo Ann Day. Each party filed a

motion for traditional and no-evidence summary judgment. The trial court granted Eisenhauer's motion and denied Bank of America's motion. A jury trial was held on Eisenhauer's request for attorney's fees.[1] The trial court entered a final judgment awarding Eisenhauer, individually and as independent executor of Lorene's estate, damages and attorney's fees. By six issues, which we reorganize as four, Bank of America contends (1) the trial court erred in granting summary judgment in favor of Eisenhauer because he failed to state the grounds upon which the motion was made; (2) the trial court erred in denying Bank of America's no-evidence motion for summary judgment because Eisenhauer provided no evidence to support various elements of his claims; (3) the trial court erred in denying Bank of America's traditional motion for summary judgment because Eisenhauer, as executor of Lorene's estate, was estopped from pursuing his claim; and (4) the trial court erred by failing to require Eisenhauer to segregate his attorney's fees' evidence. We affirm, in part, reverse and render, in part, and reverse and remand, in part.

## I. BACKGROUND[2]

In June 2003, Lorene and her husband, H.W., renewed a certificate of deposit (the Walter CD) account at Bank of America. The certificate was titled "H. W. Walter and Lorene Walter ITF Jo Ann Day and Dwight Eisenhauer." H.W. died in June 2004. Lorene, as co-owner of the Walter CD and the surviving spouse, became the sole owner of the Walter CD. Upon the death of Lorene, any remaining sums were to be paid in equal shares to Day and Eisenhauer.

---

[1]The jury found reasonable attorney's fees to be $31,500 for preparation and trial, $15,000 for an unsuccessful appeal to the court of appeals by Bank of America, and $15,000 for an unsuccessful appeal by Bank of America to the Texas Supreme Court. The trial court also awarded pre- and post-judgment interest and $1,409.90 representing costs and fees incurred by Eisenhauer during the course of the lawsuit.

[2]The facts set out in the background section are undisputed.

2

On July 16, 2004, Day, a long-time employee of Eisenhauer and co-executor with Eisenhauer of H.W.'s estate, presented H.W.'s death certificate to Bank of America. Day requested that Bank of America's employee, Joyce Sheen, distribute funds from the Walter CD to Day and Eisenhauer even though Lorene was still alive. Sheen complied with Day's request and issued a cashier's check in the amount of $27,497.67 to Day. A second cashier's check in an equal amount was issued and mailed to Eisenhauer. At Day's request, Sheen closed the Walter CD account. Bank of America acknowledges that it made an error when it distributed these funds to Eisenhauer and Day. Eisenhauer returned the check issued to him and, pursuant to his power of attorney, opened a new account in Lorene's name with himself as the only beneficiary. Eisenhauer deposited his check into that account.

Bank of America phoned Day to inform her of the error. Day responded that she would have her attorney contact Sheen. Bank of America also contacted Day regarding the money through three letters written between July 28, 2004 and August 27, 2004. On August 16, 2004, Day's attorney tendered $5,000 to Bank of America. On November 17, 2004, Bank of America's legal department wrote to Day's attorney, acknowledging that Day had offered to pay Bank of America part of the money as a lump sum with the remaining amounts to be paid in installments. In its November 17 letter, Bank of America rejected Day's offer and advised her that it would consider legal remedies, including litigation, if payment was not received within ten days from the date of the letter.

On August 27, 2004, Beverly Wynone Belcher Ringland was appointed temporary guardian of the person and the estate of Lorene, and her appointment was continued and

3

confirmed on October 22, 2004.[3]  On or about February 2, 2005, Ringland delivered a document to Bank of America, which recited the following:  (1) the Walter CD designated Day and Eisenhauer as payable-on-death beneficiaries; (2) H.W. died on June 20, 2004; (3) Bank of America mistakenly permitted Day to withdraw funds from the Walter CD account and distributed, in error, the proceeds in equal shares to Day and Eisenhauer; (4) Eisenhauer returned his distribution to Bank of America; (5) Day retained her distribution despite Bank of America's demands; (5) Ringland was appointed guardian of the person and estate of Lorene;  and (6) "Ringland, in her fiduciary capacity as guardian for [Lorene], desires that Day retain the funds received by her and that [Bank of America] withdraw its demand on Day to return funds to the Account."  In addition to the above recitals, the Ringland document contained the following paragraph titled "Agreement":

> Therefore, in consideration of forbearance from recovery efforts by the Bank against Day, Ringland, in her fiduciary capacity as guardian for Walter, agrees to indemnify, defend, protect, and hold Bank of America harmless from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, and damages, including reasonable attorney's fees and costs, that Bank of America may incur or suffer in connection with or resulting from the Withdrawal.

Following receipt of this document, Bank of America returned the $5,000 check to Day's attorney and took no further actions to collect the money from Day.

On March 7, 2005, Eisenhauer replaced Ringland as court-appointed guardian for Lorene's person and estate.  Lorene died on May 2, 2005, and on May 25, 2005, Eisenhauer became independent executor of Lorene's estate.  Eisenhauer filed suit against Bank of America on September 13, 2005, asserting claims for breach of contract,

---

[3]The August 27, 2004 order appointing Beverly Wyone Belcher Ringland temporary guardian of the person and estate of Lorene Belcher Walter and the October 22, 2004 order continuing and confirming her appointment provided, inter alia, that Ringland "shall have . . . the power and duty to preserve all claims of the Ward."

4

violation of state law,[4] negligence, gross negligence, and breach of fiduciary duty; Eisenhauer requested actual damages, punitive damages, and attorney's fees. In his petition, Eisenhauer alleged that one of the assets of Lorene's estate "was a cause of action against Bank of America for wrongfully, illegally and negligently closing [the Walter CD account] . . . and wrongfully and illegally paying one-half of such funds to a third party not entitled to such funds." Bank of America and Eisenhauer filed motions for traditional and no-evidence summary judgment. The trial court granted summary judgment for Eisenhauer and denied Bank of America's motion. After a jury determined the amount of Eisenhauer's attorney's fees, the trial court entered final judgment awarding Eisenhauer actual damages of $27,797.67 and attorney's fees of $61,000. This appeal ensued.

## II. STANDARD OF REVIEW

### A. Summary Judgment Generally

Ordinarily, when both sides move for summary judgment and the trial court grants one motion and denies the other, the Court reviews the motions and all summary judgment evidence and renders the judgment that the trial court should have rendered. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 129 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). "However, we may also reverse the judgment and remand the cause when we find that course proper." *K3 Enters. v. McDaniel*, 8 S.W.3d 455, 458 (Tex. App.–Waco 2000, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 392 (Tex. 1983) (providing that the property settlement agreement

---

[4]Specifically, Eisenhauer claimed that Bank of America violated the express provisions of section 447 of the Texas Probate Code. *See* Tex. Prob. Code Ann. § 447 (Vernon 2007).

5

that the trial court found unambiguous was found ambiguous by the supreme court and the cause was remanded for the trier of fact to resolve the ambiguity); *Sosa v. Williams*, 936 S.W.2d 708, 711 n.1 (Tex. App.–Waco 1996, writ denied) (concluding that remand was proper when competing motions were based on different premises)).

In reviewing motions for summary judgment, issues not expressly presented to the trial court by written motion or response to a motion for summary judgment cannot be considered as grounds either to affirm or reverse the trial court's judgment. TEX. R. CIV. P. 166a(c); *McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex. 1993); *see Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 774 (Tex. App.–Corpus Christi 2007, no pet.) (op. on reh'g). "A motion must stand or fall on the grounds expressly presented in the motion." *McConnell*, 858 S.W.2d at 341.

## B. Traditional Summary Judgment

Our review of the trial court's grant or denial of a traditional motion for summary judgment is de novo. *See Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). The moving party bears the burden of showing both no genuine issue of material fact and entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ortega*, 97 S.W.3d at 772. In deciding whether there is a genuine issue of material fact, the Court takes evidence favorable to the non-movant as true. *Ortega*, 97 S.W.3d at 772. All reasonable inferences benefit and all doubts are resolved in favor of the non-movant. *Id*. Summary judgment for a defendant is proper if the defendant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id*. A non-movant has the burden to respond to a traditional summary judgment motion if the movant

6

conclusively: (1) establishes each element of its cause of action or defense; or (2) negates at least one element of the non-movant's cause of action or defense. *Id*.

In a traditional motion for summary judgment, rule 166a(c) requires that the movant "shall state the specific grounds" upon which the motion is made. TEX. R. CIV. P. 166a(c); *see McConnell*, 858 S.W.2d at 341; *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 688 (Tex. App.–Dallas 2007, pet. denied) (op. on reh'g). "In determining whether the grounds are expressly presented, reliance may not be placed on . . . the summary judgment evidence." *McConnell*, 858 S.W.2d at 341. A trial court cannot grant a summary judgment motion on grounds not presented in the motion. *See id*.

## C. No-Evidence Summary Judgment

A no-evidence motion for summary judgment asserts that there is no evidence of one or more essential elements of a claim on which the adverse party will bear the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 840 (Tex. App.–Corpus Christi 2003, pet. denied). This type of motion must specifically identify the elements of the claim for which there is no evidence. *Meru v. Huerta*, 136 S.W.3d 383, 386 (Tex. App.–Corpus Christi 2004, no pet.). Conclusory motions or general no-evidence challenges to an opponent's case are not appropriate under this rule. *Id*. at 387. Under rule 166a(i), "[t]he court must grant the [no-evidence] motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i); *see Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.–Austin 1998, no pet.). The movant has no burden to attach any evidence to a no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i); *Ortega*, 97 S.W.3d at 772. The non-movant bears the entire burden of producing evidence to

defeat a no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i). When the non-movant fails, the "court must grant the motion." *Id*.

In reviewing a no-evidence motion, the Court applies the same legal-sufficiency standard as it does when reviewing a directed verdict. *Belalcazar*, 99 S.W.3d at 840. "'Like a directed verdict, then, the task of the appellate court is to determine whether the [non-movant] has produced any evidence of probative force to raise fact issues on the material questions presented.'" *Id*. (quoting *Jackson*, 979 S.W.2d at 70). To raise a genuine issue of material fact, the non-movant must bring forth more than a scintilla of probative evidence on the challenged element. *See Jackson*, 979 S.W.2d at 70; *see also Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.–San Antonio 1998, pet. denied) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "Conversely, more than a scintilla exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ortega*, 97 S.W.3d at 772 (quoting *Transp. Inc. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).

### III. ANALYSIS

### A. Eisenhauer's Traditional Motion for Summary Judgment [5]

---

[5]Eisenhauer's motion was also titled as a no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166a(i) (stating that a party may be entitled to summary judgment on the ground that there is "no evidence of one or more essential elements of a claim or defense on which the *adverse party* would have the burden of proof at trial" (emphasis added)). However, a no-evidence summary judgment is not available to a plaintiff arguing that his own claims are conclusively established by the evidence, as in this case. *See Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 684 (Tex. App.–Dallas 2005, no pet.) (finding that the no-evidence summary judgment motion was improperly granted "[b]ecause the Carpet Mills of America defendants' motion for summary judgment did not specifically state which elements of the Thomases' claims lacked supporting evidence and relied on the affirmative defense of disclaimer as a basis for no-evidence summary judgment"); *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680-81 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (explaining that a party with the burden of proof at trial cannot bring a no-evidence summary-judgment motion).

By its first issue, Bank of America contends that the trial court erred when it granted summary judgment in favor of Eisenhauer because Eisenhauer did not state the grounds upon which his traditional motion was based. Eisenhauer's motion for summary judgment recited a "Statement of Undisputed Facts," set out general summary judgment standards, listed his summary judgment evidence which he attached and incorporated into his motion, and prayed for relief. Eisenhauer now asserts that his motion was sufficient and gave fair notice of the grounds on which it was based because it: (1) was eight pages long; (2) was accompanied by 229 pages of summary judgment evidence; (3) laid out Bank of America's erroneous closure of the Walter CD account and Bank of America's refusal to return the $27,497.67 to Lorene's estate; and (4) prayed for recovery of $27,497.67, "representing the amount of funds owed by Bank of America to Mrs. Walter before her death." Eisenhauer argues that, thus, the ground for summary judgment was recovery of the $27,497.67 that Bank of America owed Lorene because it admittedly violated the terms of her certificate of deposit, constituting a breach of contract claim. We are not persuaded by Eisenhauer's argument.

Nowhere in his motion did Eisenhauer expressly state the above grounds or reasons which he now argues are sufficient to entitle him to summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341; *Mercier*, 214 S.W.3d at 774. The undisputed facts Eisenhauer provided were not expressly set out as grounds or reasons that would entitle Eisenhauer to summary judgment. *See McConnell*, 858 S.W.2d at 341. Eisenhauer cannot rely on his recitation of facts, and he may not place his reliance on the attached summary judgment evidence to provide the grounds for the motion. *See id.* Therefore, because Eisenhauer's traditional motion for summary judgment did not

9

expressly present grounds for which summary judgment could have been granted, we conclude that the trial court erred in granting Eisenhauer's summary judgment on any basis, including his breach of contract claim. *See id*.; *see also* TEX. R. CIV. P. 166a(c); *Mercier*, 214 S.W.3d at 774. We sustain Bank of America's first issue.[6]

## B. Bank of America's No-Evidence Motion for Summary Judgment

In its second issue, Bank of America asserts that the trial court erred when it denied its no-evidence motion for summary judgment. Bank of America specifically challenges the trial court's denial on the basis that there was no evidence of the following: (1) a non-contractual legal duty; and (2) Eisenhauer's individual standing to bring suit.[7] *See* TEX. R. CIV. P. 166a(i); *Meru*, 136 S.W.3d at 386; *Belalcazar*, 99 S.W.3d at 840.

### 1. Non-Contractual Legal Duty

Bank of America asserts that the trial court erred in denying its no-evidence motion because Eisenhauer provided no evidence of a non-contractual legal duty or a fiduciary duty owed by Bank of America. Under rule 166a(i), the trial court should have granted Bank of America's motion unless Eisenhauer produced summary judgment evidence raising a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i); *LaCour v. Lankford*

---

[6]Having sustained Bank of America's first issue, we need not address Bank of America's fourth issue challenging the trial court's award of attorney's fees on the basis that Eisenhauer did not segregate his attorney's fees' evidence. *See* TEX. R. APP. P. 47.1

[7]Bank of America also asserts it claimed that there was no evidence of Bank of America's breach of any non-contractual legal "duty," proximate cause, or damages. We disagree. Bank of America's motion did not specifically state that there was no evidence of breach, proximate cause, or damages for the non-contract claims. *See Meru v. Huerta*, 136 S.W.3d 383, 386 (Tex. App.–Corpus Christi 2004, no pet.); *see also* TEX. R. CIV. P. 166a(i); *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 840 (Tex. App.–Corpus Christi 2003, pet. denied). The trial court could not have granted Bank of America's motion as to these elements because Bank of America did not expressly present these issues in its motion. *McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex. 1993).

We also note that Bank of America does not challenge the trial court's denial of its no-evidence motion as to Eisenhauer's state-law violation claim.

10

*Co.*, 287 S.W.3d 105, 109 (Tex. App.–Corpus Christi 2009, pet. denied) ("Once a no evidence motion for summary judgment is filed, the non-moving party must present evidence raising an issue of material fact as to the elements of the claim challenged in the motion.") (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). Eisenhauer, however, filed no response to Bank of America's motion. Eisenhauer did file a document titled "PLAINTIFF'S OBJECTIONS TO EVIDENCE [FILED] IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" and now urges this Court to consider it as his response. We decline to do so. Moreover, even were we to construe it as a response, nowhere in that document does Eisenhauer respond to, or even mention, Bank of America's alleged non-contractual legal duty or fiduciary duty.

Eisenhauer also argues that, because there are competing motions for summary judgment, this Court should review the motions and all the summary judgment evidence. *See SAS Inst.*, 167 S.W.3d at 841; *Agan*, 940 S.W.2d at 81. However, even assuming that all summary judgment evidence is properly considered in our analysis of Bank of America's no-evidence motion, we nevertheless conclude that Eisenhauer has failed to raise a genuine issue of material fact regarding the duty element of his non-contractual causes of action. *See* TEX. R. CIV. P. 166a(i); *Jackson*, 979 S.W.2d at 70; *see also Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) ("[R]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages") (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995) and citing *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981) (explaining in a breach of contract action that even if the breach is malicious, intentional, or capricious, that punitive damages are not recoverable without a tort)).

11

## 2.  Eisenhauer's Individual Standing to Bring Suit

Bank of America next asserts by its second issue that the trial court erred in denying its no-evidence motion as to Eisenhauer, individually, because Eisenhauer produced no evidence of his individual standing to sue.  We agree.

"It is settled in Texas that the personal representative of the estate of a decedent is ordinarily the only person entitled to sue for the recovery of property belonging to the estate."[8]  *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971); *see* TEX. PROB. CODE ANN. § 233A (Vernon 2003).  In this case, it is undisputed that Eisenhauer was the executor of the estate and, as Lorene's personal representative, had standing to sue in that capacity for recovery of any property belonging to Lorene's estate.[9]  *See Frazier*, 472 S.W.2d at 752.  However, Eisenhauer filed no response to Bank of America's no-evidence motion challenging his *individual* standing to sue.  And, as we reasoned above, even assuming that all evidence is properly considered in our analysis of Bank of America's no-evidence motion, we nevertheless conclude that Eisenhauer has failed to raise a genuine issue of material fact regarding his individual standing to sue.  *See* TEX. R. CIV. P. 166a(i); *Jackson*, 979 S.W.2d at 70.

---

[8]The term "[p]ersonal representative . . . includes executor, independent executor, administrator, independent administrator, temporary administrator, together with their successors."  TEX. PROB. CODE ANN. § 3(aa) (Vernon Supp. 2009).

[9]There are exceptions to the general rule; however, none apply here.  *See, e.g.*, *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998) (setting out that an heir at law can maintain a suit for the recovery of property belonging to the estate when he alleges and proves there is no administration pending and none is necessary); *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971) (same); *Mayhew v. Dealey*, 143 S.W.3d 356, 371 (Tex. App.–Dallas 2004, pet. denied) (providing "that heirs may bring suit when the personal representative cannot, or will not, bring the suit or when the personal representative's interests are antagonistic to those of the estate") (citing *Chandler v. Welborn*, 294 S.W.2d 801, 806 (Tex. 1956); *Burns v. Burns*, 2 S.W.3d 339, 342 (Tex. App.–San Antonio 1999, no pet.)).

12

### 3. Conclusion

Based on the above analysis, we conclude the trial court erred when it denied Bank of America's no-evidence motion for summary judgment as to Eisenhauer's negligence, gross negligence, and fiduciary duty claims and as to Eisenhauer's standing to sue as an individual. We sustain Bank of America's second issue.

**C. Bank of America's Traditional Motion for Summary Judgment**

By its third issue, Bank of America contends that Eisenhauer, as independent executor of Lorene's estate, has no standing to sue. Bank of America argues that its disbursement of the funds in question was expressly affirmed by Day, Lorene's guardian at that time; thus, no claim survived Lorene's death. Bank of America pleaded numerous affirmative defenses to the survival of the claim, including estoppel, ratification, waiver, release, and accord and satisfaction. It also pleaded failure to satisfy a condition precedent as an affirmative defense. In its traditional motion for summary judgment, Bank of America argued that these named defenses, inter alia, provided bases for granting its motion. Now, on appeal, Bank of America asserts only estoppel and failure to satisfy a condition precedent to support its contention that the trial court erred in denying its traditional motion for summary judgment.

#### 1. Estoppel

Bank of America bases its estoppel defense on the document it received from Ringland, who was, at that time, guardian of Lorene's person and estate. In the document, Ringland recited that she "desire[d] that Day retain the funds received by her and that the Bank withdraw its demand on Day to return funds to the Account."

13

In its traditional motion for summary judgment and in its response to Eisenhauer's motion, Bank of America presented the following estoppel argument:

> Estoppel arises where, by the fault of one, another is induced to change his or her position for the worse. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 736 (Tex. App.–Corpus Christi 1994, writ denied). The elements of an estoppel defense are (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)[, *overruled on other grounds by In re United Servs. Auto. Ass'n*, 53 Tex. Sup. Ct. J. 485, 2010 Tex. LEXIS 282 (Tex. Mar. 26, 2010)].

> As stated above, through the Guardian, the Decedent expressly instructed Bank of America to cease and desist from any attempts to recover the subject funds from Day and expressly stated the Decedent's desire that Day retain the subject funds. . . . Bank of America relied upon the instructions of the Guardian to its detriment. The Decedent is thus estopped from bringing suit against Bank of America for any and all acts relating to the early distribution.

Now, on appeal, Bank of America argues that Lorene—through Eisenhauer—is estopped from bringing suit against Bank of America for any and all acts related to the early distribution. Specifically, Bank of America claims to have reasonably relied on Ringland's instructions and asserts the following argument in support of its contention that its reliance is conclusively established:

> The Indemnity Agreement unequivocally provides that Ringland, as court[-]appointed fiduciary, desires that Day—an individual whom both Mr. and Mrs. Walter affirmatively selected as their payable on death beneficiary—retain the very funds they contracted to convey to her and that Bank of America withdraw its demand on Day to return those funds. Bank of America relied, to its detriment by promptly returning a $5,000.00 check. Eisenhauer came forward with no summary judgment evidence to refute Bank of America's reliance evidence or the reasonableness of relying on a notarized instrument executed by the court appointed guardian of Mrs. Walter. Thus, the point should be concluded in Bank of America's favor. At a minimum, a fact issue was raised as to the reasonableness of Bank of America's reliance and summary judgment for Eisenhauer is improper.

14

Summary judgment is proper if a defendant, Bank of America in this case, affirmatively establishes each element of its affirmative defense. *See Ortega*, 97 S.W.3d at 772. Bank of America's argument relies on cases where the estoppel defense arises "where by fault of one, another has been induced to change his position for the worse." *Herschbach*, 883 S.W.2d at 736. In its summary judgment motion and its response, Bank of America set out all of the elements of an estoppel defense that it must establish. *See Schroeder*, 813 S.W.2d at 489. However, in the summary judgment proceeding below and now on appeal, Bank of America argues only that it conclusively established detrimental reliance, the fifth element of estoppel. *See id.* Bank of America does not assert that it affirmatively established each of the remaining elements of the affirmative defense of estoppel; that a false representation or concealment of material facts was made with knowledge, actual or constructive, of those facts, with the intention that it should be acted on, to a party without knowledge or means of obtaining knowledge of the facts. *See id.*; *Ortega*, 97 S.W.3d at 772. Therefore, even were we to conclude that Bank of America established the reliance element, the trial court did not err in denying Bank of America's traditional motion for summary judgment based on the asserted estoppel defense because Bank of America did not address the remaining elements. *See Ortega*, 97 S.W.3d at 772.

### 2. Condition Precedent

Bank of America also contends that the following provision, found in its September 1, 2003 Deposit Agreement and Disclosures (Deposit Agreement), created a condition precedent that required Eisenhauer to give notice of any alleged problem or unauthorized transaction within sixty days of Bank of America sending a statement or otherwise making it available:

15

**Examining Statements and Reporting Problems**

You agree to promptly and carefully review your statement and any accompanying items. You must report problems or unauthorized transactions to us immediately, by calling the number for Customer Service on your statement. . . . You agree that 60 days after we send a statement (or otherwise make it available) is the maximum reasonable amount of time for you to review your statement and report any problem or unauthorized transaction related to a matter shown on the statement. In addition if you do not notify us in writing of suspected problems or unauthorized transactions within 60 days after we send your statement, or otherwise make it available, you agree that you cannot make a claim against us relating to the unreported problems or unauthorized transactions.

A condition precedent is defined as a condition either to the formation of the contract or to an obligation or a duty to perform arising under an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.–Corpus Christi 2001, no pet.); *see Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 21-22 (Tex. App.–San Antonio 1997, writ denied) (explaining that a condition precedent limits a claim because it requires an aggrieved party to first perform a specified act before commencing an action).

In its argument on appeal, Bank of America asserts that failure to satisfy a condition precedent is an affirmative defense and that the following establishes that defense: (1) the plain terms of the Deposit Agreement provide that account holders must promptly notify Bank of America of any errors, forgeries, unauthorized signatures, or unauthorized withdrawals; (2) it is undisputed that no such timely, written notice was provided; (3) the Deposit Agreement states that quarterly statements are provided for savings accounts; and

16

(4) a federal tax form 1099 was provided at the end of 2004.[10] Bank of America asserts that Eisenhauer is precluded from asserting liability against it for its early distribution to Day. Bank of America urges that either its affirmative defense of failure to satisfy a condition precedent is established as a matter of law or, at the very least, there is a fact issue precluding summary judgment in favor of Eisenhauer.

As a threshold matter, we address Bank of America's reference to Eisenhauer's alleged failure to satisfy a condition precedent as an affirmative defense. Bank of America urged in its motion for traditional summary judgment and now on appeal that the evidence established this affirmative defense as a matter of law; thus, the trial court erred in denying its traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c); *Ortega*, 97 S.W.3d at 772; *see also* TEX. R. CIV. P. 54 (providing for the defense of failure to satisfy a condition precedent), 94 (identifying affirmative defenses). However, failure to satisfy conditions precedent is not an "affirmative defense" on which Bank of America bore the burden of proof. *See Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 729 n.1 (Tex. App.–Houston [14th Dist.] 2003, no pet.).

---

[10]Interestingly, Bank of America brings to our attention that there is conflicting evidence in the record creating fact issues regarding whether Eisenhauer received a copy of the Deposit Agreement. Eisenhauer states, in his sworn statement, that he "never had and never saw a copy of the [Deposit Agreement]," while the trial court's October 22, 2004 order appointing Ringland temporary guardian of Lorene provides that "[c]omplete records of such accounts have been maintained and are still being maintained by Dwight Eisenhauer." Furthermore, although Bank of America's motion for summary judgment indicates that the Deposit Agreement was incorporated into the Walter CD, copies of the Walter CD that are in the appellate record are illegible.

Moreover, Bank of America argues only that the Deposit Agreement states that quarterly statements are provided for savings accounts. It provides no record citation to a quarterly statement provided to Eisenhauer, and we find no such document in the record. And the 1099 tax form referenced by Bank of America, apparently in support of its argument that a statement was provided, identifies only 2004 interest income from the Walter CD.

17

Texas Rule of Civil Procedure 54 provides that after a defendant has specifically denied the performance of the condition precedent, the plaintiff is required to prove the performance of only those conditions that the defendant has specifically denied. TEX. R. CIV. P. 54. The effect of rule 54 is to shift the burden of pleading to the defendant, not the burden of proof; the burden of both pleading and proof of performance of all conditions precedent to recovery remains with the plaintiff. *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.–Dallas 1983, writ ref'd n.r.e.). As the Houston Court and the Dallas Court have explained:

> A condition precedent to the right to maintain an action must be performed and "the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery." *Southwestern Associated Telephone Co. v. City of Dalhart*, 254 S.W.2d 819, 825 (Tex. Civ. App.–Amarillo 1952, writ ref'd n.r.e.). When a plaintiff avers generally that all conditions precedent have been performed, he is required to prove the performance of only those conditions precedent specifically denied by the defendant. The effect of this rule is to shift the burden of pleading to the defendant, but not the burden of proof, when the plaintiff has made a general allegation that all conditions precedent have been performed.

*Lidawi*, 112 S.W.3d at 729 n.1 (quoting *Trevino*, 651 S.W.2d at 11). Therefore, when a defendant's liability on a contract depends on the performance or happening of a condition precedent, the plaintiff, not the defendant, must allege and prove that the condition has happened or has been performed or that there was a waiver of the condition precedent. *See Parkview Gen. Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.); *see also Hurst v. Rush*, 514 S.W.2d 472, 475 (Tex. Civ. App.–Beaumont 1974, no writ). In the absence of the occurrence or performance of such a condition precedent, there can be no breach of contract. *Hurst*, 514 S.W.2d at 475; *Eppes*, 447 S.W.2d at 490-91.

18

Thus, we are not persuaded by Bank of America's affirmative-defense argument. Even assuming that this notification provision requiring written notice of a problem reflected in a written statement received by a customer is a condition precedent under the facts of this case, Bank of America's traditional motion for summary judgment arguing that it established the affirmative defense of failure of a condition precedent was not appropriate.[11]

### 3. Conclusion

Based on the above analysis, we conclude that the trial court did not err in denying Bank of America's traditional motion for summary judgment as to the estoppel affirmative defense and the defense of failure to meet a condition precedent. We overrule Bank of America's third issue.

### IV. DISPOSITION

We reverse the trial court's order denying Bank of America's no-evidence motion for summary judgment on Eisenhauer's negligence, gross negligence, and breach of fiduciary

---

[11]Bank of America contends by a sub-issue that the trial court abused its discretion when it struck Bank of America's summary judgment exhibits B and C, both titled "Deposit Agreement and Disclosures" (Deposit Agreement) and dated October 1, 2002 and September 1, 2003, respectively. Bank of America describes the Deposit Agreement as the underlying written contract upon which Eisenhauer's claims depend. Nonetheless, even were we to conclude that the trial court abused its discretion when it struck the exhibits, *see Creative Thinking Sources, Inc. v. Creative Thinking, Inc.,* 74 S.W.3d 504, 514 (Tex. App.–Corpus Christi 2002, no pet.) (providing that the admission or exclusion of summary judgment evidence is reviewed for abuse of discretion), the error was harmless because the same Deposit Agreements were attached as exhibits B and C to Bank of America's response to Eisenhauer's motion for summary judgment. *See* TEX. R. APP. P. 44.1(a)(1). Further, as Bank of America acknowledges, Eisenhauer did not object to these exhibits, and there is no order striking them. Thus, the Deposit Agreement was part of the summary judgment evidentiary record in the trial court and is now part of the appellate record. We overrule this sub-issue.

Bank of America also notes that the Deposit Agreement provides that, should liability be found, Bank of America's maximum liability is the amount of the "unauthorized withdrawal" and that it is "not liable to [the depositor] for special or consequential losses or damages of any kind, including . . . attorneys' fees incurred by you." However, this argument was not made to the trial court and, thus, is not before us in this appeal. *See McConnell*, 858 S.W.2d at 341.

duty claims and render judgment in favor of Bank of America on said claims. We reverse the trial court's order denying Bank of America's no-evidence motion for summary judgment on claims filed by Eisenhauer individually and render judgment in favor of Bank of American on said claims. In all other respects, we affirm the trial court's order denying Bank of America's traditional and no-evidence motion for summary judgment.

Furthermore, we reverse the trial court's order granting summary judgment in favor of Eisenhauer, as independent executor of the estate of Lorene Belcher Walters, and its judgment awarding damages for breach of contract and remand for proceedings consistent with this opinion. Because we reverse and remand the underlying claim for breach of contract, we also reverse and remand the trial court's award of attorney's fees and court costs.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
15th day of July, 2010.